Common Pleas Court of Hamilton County.

MAUDE BETHEL V. TAXICABS OF CINCINNATI, INC., ET AL.

Decided April 21, 1933.

*Simon Leis* and *Scott H. Ray,* for plaintiff.
*S. Geismar,* for defendant, Peterson.
*John M. McCaslin,* for Taxicabs of Cincinnati.

MATTHEWS, J.

This cause comes before the court upon the motions of the defendants to set aside the verdicts and for a new trial.

The jury returned a verdict against the defendant, Taxicabs of Cincinnati, Inc., in the sum of $1500.00, and a verdict against Harrison J. Peterson in the sum of $3000.00. The first ground urged by the defendant, Harrison J. Peterson, for setting aside the verdict against him is that it is illegal as to form and void. The defendant, Taxicabs of Cincinnati, does not by its motion specifically raise this question, but there is a general claim by it that the verdict is contrary to law. On the argument of the motions it was urged that in this sort of an action separate verdicts for the plaintiff against defendants in different amounts is unjustified under the law.

The action is one for personal injury. The plaintiff was a passenger in an automobile proceeding southwardly on Vine street and at its intersection with Central parkway a collision took place between the automobile in which she was a passenger, and the automobile of the defendant Peterson, which was proceeding eastwardly on the parkway, and thereafter another collision took place between the automobile in which the plaintiff was, and a taxicab of the defendant, Taxicabs of Cincinnati, which was proceeding in a northerly direction on Vine street. The allegation of the plaintiff's petition in this respect was that "immediately following the collision" of the automobile in which the plaintiff was a passenger with the automobile of the defendant Peterson, and while that automobile "was in an obviously perilous stationary position in the said intersection of Vine street and Central parkway it was struck by and was collided with by a taxicab belonging to the defendant, Taxicabs of Cincinnati, Inc."

The plaintiff alleged specific acts of negligence against each of the defendants. She alleged that the defendant, Harrison J. Peterson, was negligent in driving at a high and excessive rate of speed and at a rate so great that he could not stop within the assured clear distance ahead; that he failed to take any precaution for the safety of the plaintiff, failed to give any signal of warning to the plaintiff;

failed to keep a proper lookout, and neglected to stop, and to so steer and guide his automobile as to avoid striking the automobile in which the plaintiff was a passenger.

Now, as against the defendant, Taxicabs of Cincinnati, she alleged specific acts of negligence in that it drove its taxicab at a high and excessive rate of speed, failed to take any precaution for the safety of the plaintiff, failed to give any signal of warning to the plaintiff, failed to keep a proper lookout, failed to keep its taxicab under proper control, neglected to stop its taxicab and to so steer and guide it as to avoid striking the automobile in which the plaintiff was a passenger when he saw the perilous position of the plaintiff and the automobile in which the plaintiff was a passenger.

It is clear that these allegations show no concert of action between the defendants but do show independent acts of negligence happening so nearly at the same time that, perhaps the direct effect of the one continued until the negligence of the other also directly caused injury to the plaintiff.

Both of the defendants filed answers to this petition and the question of misjoinder was not raised at any time before, at or during the trial.

The plaintiff testified as to the first collision and then proceeded with her testimony as to the second collision. Among other things she said "I was getting ready to get up with the child when all of a sudden I don't know no more." In answer to the question as to whether the automobile in which she was riding had come to a stop after the first collision, before the second collision, she said: "It was stopped still. That is when I started to move." She also testified as follows:

"Q. State what, if anything, happened after your car came to a stop?
"A. It did happen.
"Q. Did anything happen?
"A. Yes, another car jolted me out. Another collision happened. He was stopped. I had the child ready to get up when all of a sudden I don't know no more. After that, after the first collision I was conscious then. I was intending to see what happened."

The plaintiff's husband who was driving the automobile in which she was a passenger, testified as follows:

"Q. What, if anything, happened to your machine after it was struck by this cab of the West End Cab Company?

"A. Why it was shoved backwards clear across the street to the south corner and stopped a few seconds and I was struck again by another taxicab.

"Q. About how many second elapsed between the first collision and the second collision, to the best of your knowledge?

"A. I judge about forty."

The evidence introduced by the defendant, Taxicabs of Cincinnati, was to the general effect that the driver of this taxicab had seen the other two automobiles approaching the intersection at right angles and had realized the imminence of a collision and had brought its taxicab to a stop slightly south of the intersection and that the collision of the defendant Peterson's taxicab with the automobile in which the plaintiff was riding threw that automobile across the street and against the front of its taxicab.

The evidence also raised the issues of sole negligence on the part of the driver of the automobile in which the plaintiff was riding and as defendant Taxicabs of Cincinnati contended contributory negligence on the part of the plaintiff herself.

The difficulties presented in this case result from the necessity of distinguishing between liability of joint tort-feasors for entire damage, and liability of independent tortfeasors for distinct acts and distinct damages resulting therefrom.—Did the petition and the evidence disclose that the defendants were joint tortfeasors each responsible for the entire damage in both collisions?

In the case of *Mansfield* v. *Bristor*, 76 O. S. 270, it was held as stated in the second paragraph of the syllabus, that:

"Where different parties discharge sewage and filth into a stream, which intermingle and cause an actionable nuisance, they are not jointly liable for damages when there is no common design or concert of action, but each is liable only for his proportion of the damages."

In the case of *Mineral City* v. *Gilbow*, 81 O. S., 263, the Supreme Court was called upon to determine whether a joint liability existed between a municipality and an abutting property owner from the maintenance of a dangerous pit near the sidewalk, the allegation of negligence against the village being that it wrongfully permitted the sidewalk to be in a dangerous condition without any barrier, and as against the property owner it was alleged that he maintained a dangerous pit which enroached upon the sidewalk without any barrier or other protection to warn persons using the sidewalk. The court held that there was a misjoinder of parties defendant. At page 272 and 273, the court quoting from an Illinois case, said:

"Undoubtedly the rule is for separate acts of trespass separately done, or for positive acts negligently done, although a single injury is inflicted, the parties cannot be jointly held liable to the party injured. If there is no concert of action—no common intent—there is no joint liability. This rule is very well settled by authority. Hilliard on Torts, Section 10, page 315; *Little Schuylkill Nav., Railroad & Coal Co.* v. *Richards' Admr.* 57 Pa. St., 142; Shear & Redf. Neg., 58; *Bard* v. *Yohn*, 26 Pa. St., 482. But a different principle applies where the injury is the result of a neglect to perform a common duty resting on two or more persons, although there may be no concert of action between them. In such cases the party injured may have his election to sue all the parties owing the common duty, or each separately, treating the liability as joint or separate."

The most recent expression of the Supreme Court upon this subject is found in *Stark County Agricultural Society* v. *Brenner*, 122 O. S., 560, in which the court held, as stated in the third paragraph of the syllabus that:

"Joint liability for tort only lies where wrongdoers have acted in concert in the execution of a common purpose and where the want of care of each is of the same character as the want of care of the other."

This subject of joint tortfeasors has received the consideration of the courts of all the states and while they have agreed in the main upon the general principle, they have not uniformly agreed in its application.

In the case of *Farley* v. *Crystal Coal & Coke Company*, 9 A. L. R., 933, the rule was stated in the syllabus as follows:

"Two or more tort-feasors acting independently without concert, collusion, or pursuit of a common design, in the perpetration of like wrongful acts at the same time, working like injury to the same subject, are not jointly liable for injury subsequently resulting to any person from combination of the consequences of such wrongful acts by the operation of natural causes."

There is an elaborate annotation to this case, and at page 939 the annotator says:

"We are without any satisfactory general rule as to when various persons acting independently may be joined in an action for damages for a tort. Probably most authorities agree that if but a single injury is the result of the independent action of various tort-feasors, all may be joined in an action for damages therefor. It has been wisely suggested as the basis of this rule that the acts or omissions of the several tort-feasors are vital causes of the injury, which cannot be apportioned. This rule, however, is not entirely satisfactory, as it is not always possible to say whether the injury is single or separable."

At 942 the annotator says:

"It is a general rule that acts of independent tort-feasors, each of which causes some damage, may not be combined to create a joint liability at law for damages."

In support of the last statement the annotator cites the Ohio case of *Mansfield* v. *Bristor, supra,* as well as cases from many other jurisdictions.

Another case on this subject is that of *Mitchell Realty Co.* v. *City of West Allis*, 35 A. L. R. 396, to which is appended an annotation commencing at page 409. At page 410 the annotator cites cases in support of the general rule that acts of independent tort-feasors, each of which causes some damage, may not be combined to create a general liability for damages.

In some states, notably New York, statutes have been passed authorizing the joinder as defendants of persons against whom the right to any relief is alleged to exist, whether jointly, severally or in the alternative, and authorizing judgment to be rendered against such one or more of the defendants as may be found to be liable, and providing that it shall not be necessary that each defendant shall be interested as to all the relief prayed for, and also providing that where the plaintiff is in doubt as to the person from whom he is entitled to redress, he may join two or more defendants in order that the question of liability may be decided.

The case of *Ader* v. *Blau,* 241 N. Y., 7, 41 A. L. R., 1216, involves the applicability of that statute to an action against one "negligently causing another's death and the physician whose negligent treatment of the injury is alleged to have caused such death." It was held that the statute did not authorize the joinder.

At page 1224 it is said:

"However, most of the courts seem to have regarded the rules as to the joinder of parties and causes of action as not sufficiently flexible to permit the trial in one action of claims against persons who are concurrently liable each to the extent to which he may have occasioned the damage sustained, as in the case of simultaneous or successive injuries."

The author cites *Mineral City* v. *Gilbow, supra,* and other Ohio cases in support of that statement.

In the case at bar there was manifestly no concert of action between the defendants and tested by the rule announced by our Supreme Court, it must be held that there was a misjoinder of parties defendant. However, this defect was not objected to by either of the defendants either by demurrer or by answer, and therefore under the provisions of Section 11311, General Code, it was waived. While the defendants waived the point of misjoinder and consented that the separate causes of action against them might be tried together, their waiver did not extend beyond that, and each denied liability in toto.

Therefore, we had two separate causes of action against two defendants submitted to the jury at the same time upon evidence from which conflicting inferences could be drawn as to the liability of each of the defendants, and as to the extent of the damage of each of the defendants in the event a liability was found to exist. It therefore seems to me that it was entirely appropriate to submit forms of verdict for the use of the jury just as though the issues between the plaintiff and the defendants had been made up by separate pleadings as to each defendant—in other words, —a separate verdict for the plaintiff against each defendant, and a separate verdict for each defendant. That was what was done in this case and the jury found in favor of the plaintiff against each defendant. It seems to the court to be a question not as to the form of these verdicts, but rather as to each verdict whether or not it is supported by sufficient evidence and free from error.

I will then consider first the case against the defendant Peterson as presented by the evidence. He testified that he did not own the automobile that was in the collision but that it bore his license number and the bill of sale showed that he was its purchaser. He also testified that it was being used in a taxicab business that was being conducted under his name, Harrison J. Peterson, doing business as West End Cab Company.

Regardless of whether he was in fact the principal of the driver of this taxicab, it seems to me that it must be held that he is liable as though he were the principal. In 10 R. C. L., page 765, it is said:

"If one holds out another as his agent he is estopped to repudiate the acts of such person within the scope of his ostensible authority."

This principle of estoppel seems to me applies equally in actions in tort as in actions on contract, and that therefore the defendant Peterson was estopped on his own testimony to deny that he was the principal of the driver of the taxicab. The jury could very properly have concluded that the driver of his taxicab was negligent.

The most difficult problem connected with the plaintiff's case against the defendant Peterson is on the issue of contributory negligence. The plaintiff had crossed from the north to the south side of Central parkway. The evidence shows that that street is very wide with a strip of park running through the center dividing the two lanes of traffic going in opposite directions. The plaintiff and the driver of the automobile in which she was riding had an unobstructed view in the direction in which the defendant Peterson's taxicab was approaching for two or three blocks during all the time they were crossing the parkway from the north to the south side. Both the plaintiff and her husbank, who was driving the automobile, testified that they did not see the lights of the defendant Peterson's taxicab until it was just a few feet away from their automobile and when the collision was imminent. It is difficult to escape the conclusion that had either of them looked to the west as they were crossing the parkway, this approaching taxicab would have been seen. It was their duty to look to the west, which was on their right hand side, for approaching automobiles that had the right of way across the intersection as against them. The plaintiff was sitting to the driver's right and was in a better position to observe than the driver.

The court was requested by defendants Taxicabs of Cincinnati to charge on the subject of contributory negligence and refused to do so, believing at the time that the case was not one in which that issue was raised by the evidence. Taxicabs of Cincinnati excepted to the refusal to charge, but defendant Peterson did not.

On reconsideration the court is of the opinion that such an issue was raised and that a charge should have been given upon that subject.

The defendant Peterson was not represented by counsel at the trial and made no requests and took no exceptions of any sort. He has filed a motion for a new trial. In the general charge the jury was instructed as to the effect of finding that the collision was caused through the sole negligence of the driver of the automobile in which the

plaintiff was riding, and also was instructed that his negligence could not be imputed to the plaintiff. The jury found in favor of the plaintiff thereby finding that defendant Peterson was guilty of negligence. In no way did defendant Peterson request the submission of the issue of the plaintiff's contributory negligence to the jury, and, after much thought on the subject, I have concluded that it would be an injustice to the plaintiff and contrary to law to permit the defendant Peterson to raise this issue of contributory negligence for the first time on the motion for a new trial, and thereby secure a new trial because of the failure of the court to submit that issue to the jury.

The motion of the defendant Peterson for a new trial is therefore overruled.

Now, the defendant Taxicabs of Cincinnati did request a charge on the subject of contributory negligence and did except to the refusal of the court to give it. In view of the particular circumstances of this case and the decision of our Court of Appeals in *Rogers* v. *French-Brothers Bauer Co.*, 28 O. L. R., 241, 31 O. A. 77, I must hold that the charge on contributory negligence should have been given and that Taxicabs of Cincinnati is in a position to complain of the failure to do so.

The motion of Taxicabs of Cincinnati for a new trial is therefore sustained.